Shiras, District Judge.
Prom the record in this cause it appears that E. P. Caldwell was the inventor and patentee of a snowplow called the “Cyclone Steam Snowplow;” that a corporation by the name of the Cyclone Steam Snowplow Company was organized under the laws of the state of Minnesota for the purpose of manufacturing and selling plows under the Caldwell patent; that on the 27th of December, 1888, a contract in writing was entered into between said snowplow company and the Vulcan Iron Works, of Chicago, a corporation organized under the laws of the state of Illinois, whereby the latter company agreed to construct a rotary steam snowplow according to the model and data furnished by the snowplow company, it being further agreed that E. P. Caldwell, the patentee, was to represent the snowplow company in the preparation of plans and drawings and in the construction of the plow, for which the iron works company was to be paid the cost, with 10 per cent, added thereto. It was also agreed that the boiler, trucks, and such other parts of the machinery as might be needed to expedite the completion of the work, should be bought of other parties, and be fitted to their places in the plow by the iron works company, it being further agreed “that the said Vulcan Iron Works guaranty the workmanship and materials made up in their own shops, but do not guaranty boiler and other parts bought outside, nor the working of the machine as a whole.”
The iron works company proceeded with the construction of the plow under this contract, and had the same substantially completed on the 11th day of October, 1889, when the snowplow company brought an action of replevin in the United States circuit court in and for the northern district of Illinois against the iron works company, and thereby obtained possession of the plow, which was taken to California, and was subsequently sold to the Southern Pacific Railroad Company. In the affidavit filed in the replevin suit, and in the declaration therein filed, the value of the plow was stated to be $10,000, and a bond in the sum of $20,000 was given by the snowplow company, the statutes of Illinois providing that the plaintiff in the replevin action shall give a bond, with sureties, in a sum double the value of the property sought to be taken upon the writ in the case. On January 24, 1890, the action in replevin being called for trial; the snowplow company dismissed the same, and a judgment for the return of the property was entered in favor of the defendant in that action. The plow was not returned, and thereupon the iron works company commenced this action against the snowplow company and C. P. Jones, one of the sureties on the replevin bond, the same being brought in the United States circuit *922 court for the district of Minnesota. The defendants in this .action, among, other things, pleaded that, by the terms of the written contract between the snowplow company and the iron works company, the latter had guarantied the workmanship and materials made up in its own shop, and that said workmanship included the proper adjustment, adaptation, and mechanical construction of the machinery designed to propel and operate the patented device, but that the machinery furnished was not as guarantied, and upon the trial the snowplow coinpany introduced evidence tending to show that the boiler did not have sufficient capacity for the demands put upon it, for which reason damages were claimed on behalf of the snowplow company. The contention of the plow company was that the determination of the relative capacity of the boilers and engines was left to the iron works company, ,and therefore it was a matter of workmanship, within the terms of the guaranty contained in the written contract. The trial court held that the guaranty of the workmanship and materials made up in the shops of the iron works company did not include the matter of the capacity of the boiler, and' this ruling is the first error presented in the argument before this court.
It appears from the- evidence that the plow in question was the first one ever manufactured under the Caldwell patent. The Vulcan Iron Works Company did not hold itself out as a manufacturer of snowplows, and it cannot be held that it had agreed to manufacture a plow reasonably fit for the purpose it was intended to be applied to. In fact, the machine to be manufactured was an experimental plow. It is provided in the contract that the iron works company should prepare general and detailed drawings from the model and other data furnished by the snowplow company, the drawings to be approved by the latter company before the work was entered upon. It thus appears that the model and other necessary data were to be furnished by the snowplow 'company, based upon which the iron works company was to prepare the necessary drawings, and submit the same for the approval of the snowplow company. In view of these provisions in the contract, the guaranty therein contained cannot be extended beyond its express terms, for it was evidently placed in the contract so as to limit the liability of the iron works company. It reads as follows: “It is understood that' the said Vulcan Iron Works guaranty the workmanship and materials made up in their own shops, but do not guaranty boiler and other parts bought outside, nor the working.of the machine as a whole.” As the boiler was not made by the iron works company, that company did not guaranty'either the workmanship or materials therein found, and, if, according to the contention of plaintiff in error, the word “workmanship” is to be construed to cast upon the iron works company the duty of furnishing a boiler of capacity enough to meet the demands made upon it in the actual running of the plow, it could be as well claimed that the duty was cast upon the iron works company of furnishing engines of sufficient power to meet the demands upon them, and screws and fans of sufficient relative size, and thus, by mere inference, the iron works company would be held bound to furnish a ma *923 chine, all the parts of which were adequate for the work demanded of them, of proper relative capacity and properly fitted together, whereas it is expressly stated that the iron works company did not guaranty the working of the machine as a whole. In our judgment the trial court ruled rightly in holding that the guaranty found in the written contract did not extend to such matters as the relative capacity of the boiler and engines.
The next question arising upon the errors assigned, and the one mainly relied on by plaintiff in error, is based upon the ruling made by the trial court, to the effect that the defendants in that court were bound by the valuation placed upon the replevied property in the affidavit, writ, bond, and declaration filed in the replevin action. On behalf of plaintiffs in error it is contended that the statutes of Illinois do not require a plaintiff in replevin to affix a value to the property sought to be recovered, and that the statements found in the affidavit and declaration in the replevin action, as to the value of the property, are to ba deemed to be merely admissions, which are receivable in evidence, but do not estop the parties making the same from proving the property to be of less value than that stated in such affidavit and declaration, and in support of this contention counsel cite the cases of Wood v. May, 3 Cranch, C. C. 172; West v. Caldwell, 23 N. J. Law, 739; Peacock v. Haney, 37 N. J. Law, 181; Gibbs v. Bartlett, 2 Watts & S. 35; Muhling v. Ganeman,. 4 Baxt. 88; Briggs v. Wiswell, 56 N. H. 319; Wright v. Quirk, 105 Mass. 44.
On part of the defendant in error it is contended that in this jurisdiction this question is set at rest by the ruling of the supreme court of the United States in Ice Co. v. Webster, 125 U. S. 426, 8 Sup. Ct. Rep. 947; it being claimed that the supreme court, therein holds that a plaintiff in replevin and the sureties on the replevin bond are conclusively bound by the valuation put upon the property in the writ and bond. In that case the trial court refused to admit evidence, offered on behalf of the plaintiff in replevin and the sureties on the bond, tending to show that the property taken under the writ was less in value than the sum stated in the writ and bond, and the supreme court affirmed the action of the trial court. On part of the plaintiffs in error, it'is argued that, owing to the special facts involved in that cause, it cannot be held that the supreme court intended to declare broadly that under all circumstances a plaintiff in replevin and his sureties are concluded by the statement of the value of the property found in the writ and bond, and that, if the recital of value is to be deemed to be anything more than prima facie evidence, it should not be held to be conclusive in cases wherein it appears that the valuation was fixed by the plaintiff in replevin under a mistake of facts, whereby he was misled in estimating the value of the property sought to be replevied. There is certainly much to be said in support of the proposition that, if the valuation of property in replevin proceedings has been stated in the writ and bond under a mistake as to the actual condition of the property, it should not be held to .be conclusive, against the plaintiff in replevin and his *924 sureties. For illustration, if a person seeks to replevy grain stored in an elevator, or fruit shipped in cars, and states the value on the basis of sound grain or fruit, but when taken on the writ it appears that the grain or fruit has become heated or decayed, so that the plaintiff in replevin does not in fact receive the property in the condition he had a fair right to expect it to be in, it is difficult to see why it should not be open to the plaintiff in the replevin suit and his sureties on the bond to show this fact when sued on the bond. We do not, however, deem it necessary to determine in this case the construction to be placed on the ruling made by the supreme court in Ice Co. v. Webster. If it be true, as contended by the defendant in error, that the supreme court has therein declared the rule to be that under all circumstances the statement of value set forth in the writ and bond is conclusive against the plaintiff in replevin and his sureties when suit-is brought upon the bond, then unquestionably the rujL.ug in the trial court in this particular was correct. If, however, the rule is that it is open to the plaintiff in replevin and his sureties to prove that the statement of value was based upon the assumption that the property sought to be replevied was in good and sound condition, whereas, in fact, the property when replevied was not in such condition, and that the plaintiff in replevin, without fault on his part, he being in fact ignorant of the actual condition of the property, was thus misled in estimating the value thereof, the evidence in this case does not show a state of facts justifying the application of this rule. The snowplow company, when about to replevy the plow, knew its condition at that time,—knew how it was constructed, the size of the boiler and engines, and all other facts necessary to enable the company to place a value upon the property as it then existed. The evidence offered on behalf of the plaintiffs in error did not tend to prove that, when the machine was delivered to the snowplow company under the writ of replevin, it was in its construction or materials any other or different from what it was understood to be when the estimate of value was set forth in the affidavit, writ, and declaration, and inferentially in the bond filed in the replevin proceedings.
Furthermore,-in any view that may be taken of the force to be given to recitals of value in the writ or bond, as against the plaintiff in replevin and the sureties on the bond, we hold that, under the peculiar facts of this cause, the ruling of the trial court effectuated justice between the litigants. ■ It is an admitted fact that the plow was manufactured under the Caldwell patent, and was protected thereby. In determining its value at the time it was replevied, not only was its cost an element to be considered, but also the price to be paid to the patentee as a royalty or for a license for the right to use the machine would necessarily enter into the question of value, and the determination of the amount to be added to the cost of manufacture to cover this item was necessarily solely within the control of the snowplow company. Furthermore, when the plow was taken from the possession of the iron works company it was taken by the snowplow company to California, and used upon the lines of railway in that state, and after certain, changes and repairs had been *925 made therein it was sold, with the patent right, to the Southern Pacific Railway Company for the sum of $16,000. In so doing the snowplow company deprived the iron works company of all reasonable means of ascertaining the practical working of the machine, or of estimating its value from the results of its work, except at great cost of time and money. As this plow was the only one that, up to that date at least, had been manufactured under the Caldwell patent, its removal to such a distance from the city of Chicago deprived the iron works company of all fair opportunity of having skilled witnesses examine it as a means of ascertaining its value. Under such circumstances the snowplow company has no just cause of complaint, in that the trial court held that it was bound by the valuation it placed upon the patented machine in the affidavit, writ, and declaration filed in the replevin suit. The valuation thus fixed was the sum of $10,000, or but a little over one half of the cost of manufacture, and the recovery of the defendant in error was limited to the balance due the iron works company for the construction of the machine, to wit, the sum of $8,527.57. The result of the judgment entered in the trial court is to compel the snowplow company to pay the balance due the iron works company for the manufacture of the plow, and certainly the snowplow company cannot complain if, having taken the plow from the possession of the iron works company, and sold it for its own benefit, it is now adjudged to pay the balance justly due under the contract of manufacture. If a plaintiff in replevin is ever to be held concluded by the valuation placed by him on replevied property, the facts of this case require such effect to be given to the recitals in the affidavit, writ, declaration, and bond by means of which the snowplow company, without any just grounds for instituting the proceedings in replevin, and without discharging by payment the lien held by the iron works company for the balance due it, took the property from the possession of the latter company, and removed it to such a distance as to practically deprive the defendant in error of all fair opportunity of proving the value of the patented machine, and instead of returning the property, when so adjudged in the replevin suit, sold the same for its own benefit and at its own figures. Under such circumstances the snowplow company and its coplaintiff in error, who was the president of the company, and who made the affidavit in the replevin proceedings, have certainly no just cause of complaint in that it was ruled by the trial court that they must be held bound by the valuation which they had .placed upon the property when seeking to obtain possession thereof by legal proceedings. The judgment of the court below is therefore affirmed, at cost of plaintiffs in error.